FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 11, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JENNIFER JANEQUA SWAY,<br><br>Plaintiff,<br><br>v.<br><br>SPOKANE TRANSIT AUTHORITY,<br><br>Defendant. | NO: 2:16-CV-310-RMP<br><br>ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION |

BEFORE THE COURT is a motion for summary judgment by Defendant Spokane Transit Authority ("STA"). ECF No. 38. Plaintiff Jennifer Janequa Sway claims that the STA injured her by unlawfully suspending her ability to use paratransit service for twenty days in June 2015.

In resolving a motion to dismiss filed by Defendants earlier in this case, the Court determined that Plaintiff's third amended complaint "broadly interpreted, states a plausible claim that the paratransit service she received is not comparable to the level of service provided to individuals without disabilities and that the STA did not appropriately determine the amount of access Plaintiff would have to paratransit

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION ~ 1

services." ECF No. 24 at 8. Defendant STA now moves for summary judgment on this remaining claim, which is governed by Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132.

The Court has reviewed Defendant's motion and accompanying statement of facts, declarations, and exhibits; Plaintiff's response, accompanying declaration, and exhibits; and Defendant's reply and accompanying declaration and exhibits; and is fully informed.

## BACKGROUND

Unless otherwise noted, the following facts are undisputed. Ms. Sway has provided to the STA a licensed provider verification that she suffers from chronic pain due to arthritis in her back and neck and uses a cane to walk. ECF No. 47-2 at 3. Her degree of impairment is between moderate and severe. *Id.* Ms. Sway also submitted a document that appears to be dated August 17, 2016, and indicates that Ms. Sway is concerned about exacerbating her asthma when she goes outside of her home and that her condition is "declining." ECF No. 44-1 at 5. It is unclear from the face of the document, that Ms. Sway attached to her response, what the purpose is of the document. *See id.* In addition, Ms. Sway submitted documents and photographs from approximately July 2018 showing the condition of her feet, which she describes as having cracks that have become infected and have blisters on their soles, as a result of walking farther than Ms. Sway believes necessary to paratransit vans. ECF No. 45.

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION ~ 2

For the past several years, Plaintiff Ms. Sway has been a frequent rider on Spokane's on-demand paratransit ride service system. In 2015, Ms. Sway scheduled trips for 324 days of the year, and she scheduled trips for 306 days of 2016. ECF No. 40 at 2. In late 2015 and early 2016, Ms. Sway was scheduling multiple trips in a single day and then cancelled some or all of those trips, sometimes canceling a trip less than an hour before her scheduled pickup time. *Id*. STA's then-Paratransit and Vanpool Manager, Denise Marchioro, asserts that Ms. Sway's behavior "caused significant problems for STA, whose reservationists and paratransit van operators were forced to change the pickup and drop off schedules for other riders on very short notice." ECF No. 40 at 2.

The Paratransit Rider Handbook that was in effect in 2015 and 2016 provided that cancelling a trip less than an hour before a scheduled pickup qualified as a "no-show." ECF No. 40 at 2. According to Ms. Marchioro, "[s]ix or more no-shows within a six-month period would result in a suspension." ECF No. 40 at 2.

In February 2016, Ms. Sway allegedly exceeded the no-show limit, and STA issued a ten-day suspension of her ability to access paratransit service. ECF No. 40 at 3. However, Ms. Marchioro offered to meet with Ms. Sway before the suspension went into effect, with a plan "to rescind the suspension if Ms. Sway was receptive to being coached" on how to reduce her late cancellations and resulting no-shows. *Id*.

Ms. Sway agreed to meet, and she and Ms. Marchioro spoke in person at STA's administrative offices on February 23, 2016. Upon perceiving that Ms. Sway

understood the "disruptive effect of her late cancellations" and "appeared to be genuinely committed to changing her scheduling practices," Ms. Marchioro agreed to excuse Ms. Sway's February 13, 2016, no-show, which would eliminate the basis for the suspension, provided that Ms. Sway agreed to follow an "action plan" moving forward. Ms. Marchioro prepared the action plan that she and Ms. Sway had discussed, and Ms. Sway signed it, agreeing in part ". . . to limit the number of trips scheduled to avoid excessive changes & cancels." ECF No. 40-1 at 2; 47-3.

After her meeting with Ms. Sway on February 23, 2016, Ms. Marchioro entered a note in the STA's transit management system, referred to as "Trapeze," that: she had met with Ms. Sway; Ms. Sway agreed to implement an action plan; Ms. Marchioro excused the February 13 no-show; and Ms. Sway's ten-day suspension had been rescinded. ECF No. 40 at 3–4. However, Ms. Marchioro did not take a necessary additional step to update Ms. Sway's "client file" in Trapeze to reflect that the February 13 no-show had been excused. *Id.* at 4. Ms. Marchioro recalls in her declaration:

> I documented the fact that the no-show had been excused in a different part of the Trapeze system, but neglected to do so in the client file, where no-show records are kept. I have thought long and hard about what might have caused me to overlook the client file. I can only surmise that I got distracted on another matter and forgot to go back and update the client file.

ECF No. 40 at 4.

Ms. Sway next incurred an alleged no-show in May 2016, which STA combined with the February 13, 2016, no-show, which should have been removed

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION ~ 4

from the system, to allege that Ms. Sway was subject to a twenty-day suspension of paratransit service because she had "established a repeated pattern of six or more 'no-shows' within a six month period." ECF No. 40-2 at 2–3.

On June 21, 2016, Ms. Sway delivered a letter to STA disputing that she had exceeded the no-show limit and alleging race discrimination by STA employees. ECF No. 40-2 at 1–8. The STA decided to interpret Ms. Sway's letter as an appeal of her suspension. ECF No. 41 at 2. Because a suspension is stayed during appeal, STA's then-Paratransit Supervisor Anita Teague entered a note in the Trapeze transit management software that she had removed the 20-day suspension pending a decision from STA's then-Ombudsman and Accessibility Officer, Susan Millbank. ECF No. 41 at 1. Yet, it is undisputed that the stay of the suspension pending appeal was not communicated to Ms. Sway. ECF No. 41 at 4. There also is no record of Ms. Sway scheduling any paratransit trips between June 24 and July 13. ECF No. 42 at 2. Had Ms. Sway tried to schedule a trip during that time period, STA maintains that she would have been permitted to do so. *Id.*

In a letter dated July 12, 2016, Ms. Millbank communicated to Ms. Sway that her appeal was successful and the 20-day suspension was removed. ECF No. 41-2 at 2–8. Ms. Millbank also extensively addressed Ms. Sway's allegations regarding her no-show history and described the efforts she made to substantiate them by reviewing STA records and inquiring with some of the people involved. *Id.* Ms. Millbank also advised Ms. Sway of various considerations moving forward, to

ensure that she received the paratransit service that she needed. *Id.* Regarding any ongoing concerns about discriminatory treatment, Ms. Millbank urged Ms. Sway to initiate a complaint with her directly. *Id.*[1] With respect to successfully utilizing the paratransit system to meet Ms. Sway's transportation needs, Ms. Millbank noted that Ms. Sway had incurred only two no-shows since her February 2016 meeting with Ms. Marchioro, and Ms. Millbank encouraged Ms. Sway to keep doing what she had been doing. *Id.* at 7 ("It appears to me that you have made a big effort to schedule better and to avoid no-shows. This is very much appreciated."). In addition, Ms. Millbank apologized to Ms. Sway, in the July 12 letter, and again in her declaration submitted by Defendant, for failing to communicate to Ms. Sway that she could use the paratransit service during the appeal of the suspension. ECF Nos. 41 at 4; 41-2 at 3.

By way of damages, Ms. Sway alleges that STA failed to drop her off at a physical therapy appointment on time, causing her to miss one physical therapy session, despite Plaintiff's allowing for a 30-minute pickup window when she scheduled the particular pick up time. ECF No. 44 at 4. In addition, STA concedes

---

[1] Ms. Millbank wrote: "As I said, STA takes claims of discrimination very seriously, but the claims must be timely, specific, and investigable. This means that you need a different way to register your claims with STA. That different way is through me. From now on, when you believe that you have been discriminated against because of your race, you need to tell me—just as soon as you possibly can." ECF No. 41-2 at 6. Ms. Millbank also indicated that she was providing a claim form along with her letter.

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION ~ 6

that Ms. Sway has reported to STA that paratransit drivers have caused her to walk more than she believes is necessary to reach the van, resulting in physical pain. ECF No. 44-1 at 3.

**LEGAL STANDARD**

Defendant is entitled to summary judgment if it can "show[] that there is no genuine dispute as to any material fact and [Defendant] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex v. Catrett*, 477 U.S. 317, 322 (1986) ("Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law) (quoting former Fed. R. Civ. P. 56(c)). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

To avoid summary judgment, a plaintiff must go beyond the allegations or denials of her pleadings and come forward with specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Conclusory allegations, unsupported by factual material, are insufficient to defeat summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045

(9th Cir. 1989). Rather, once the moving party has met its burden, the nonmoving party must offer "'significant probative evidence tending to support the complaint.'" *T.W. Electrical Servic, Inc. v. Pacific Electrical Contractors Asso.*, 809 F.2d 626 (9th Cir. 1987) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

## DISCUSSION

### *Additional discovery*

As a preliminary manner, in responding to Defendant's summary judgment motion, Plaintiff included a request "to grant an additional 40 days for discovery so that plaintiff can file a motion to compel[,]" adding that "[t]his will not in anyway interfere with the scheduling dates set in this case." ECF No. 44 at 1–2. Plaintiff alleged that the "documents requested will show a clear and convincing pattern of Spokane Transit Authorities [sic] non-compliance with ADA title II laws as well as provide further documents showing deliberate indifference." *Id.* at 2.

Cognizant that Plaintiff is pursuing her claim *pro se*, the Court gives Plaintiff some leeway with respect to her failure to show her need for additional discovery in a separate affidavit or declaration, as required by Fed. R. Civ. P. Rule 56(d). *See Nava v. Velardi*, 2018 U.S. Dist. LEXIS 134766, *11 (S.D. Cal., Aug. 9, 2018). However, Plaintiff has not provided any reason why she was unable to obtain the discovery she describes during the discovery period provided by the schedule in this case. Plaintiff also has not adequately identified the discovery that she seeks, what

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION ~ 8

basis she has to think that such evidence exists, or how it will show a pattern of non-compliance with Title II or establish that Defendant's conduct in this matter rose to a level of deliberate indifference. *See White v. Baca*, 2014 WL 12700946, at*3 (C.D. Cal., Feb. 6, 2014) ("The party seeking additional discovery also bears the burden of showing that the evidence sought exists.").

As Defendant emphasizes in its reply brief, the discovery deadline in this matter passed on June 8, 2018, with significant discovery completed during the time allotted. ECF Nos. 29 at 3; 46 at 2–3. Defendant also provides an email dated June 13, 2018, in which Plaintiff questioned whether STA's production of documents was complete, alleging that Defendant's disclosure was "drastically incomplete," but concluded: "I shall not file a motion to compel as it is not necessary and is only time consuming." ECF No. 47-4 at 2.

The Court finds that Plaintiff has provided no basis to grant Plaintiff's request to conduct additional discovery at this late stage in the litigation, and, therefore, Plaintiff's request is denied.

***Whether there is a material question of fact about a violation of Title II of the ADA***

The ADA was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1) & (2).

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION ~ 9

Plaintiff seeks relief under Title II of the ADA, which provides:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, program, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

"Title II of the ADA was expressly modeled after § 504 of the Rehabilitation Act." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), as amended on denial of reh'g (Oct. 11, 2001). Section 504 of the Rehabilitation Act provides:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794; *see also Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045, n. 11 (9th Cir. 1999) ("There is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act.").

Both Title II and section 504 obligate public entities to make services, benefits, and programs accessible to people with disabilities. *See Duvall*, 260 F.3d at 1136; *Updike v. Multnomah Cty.*, 870 F.3d 939, 949 (9th Cir. 2017).

A plaintiff seeking damages under Title II of the must show discriminatory intent. *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998). The test of intentional discrimination under the ADA is deliberate indifference, which requires: (1) "knowledge that a harm to a federally protected right is substantially likely"; and

(2) "failure to act upon that likelihood." *Duvall*, 260 F.3d at 1139. An entity has knowledge, under the first element, when it has notice that an accommodation is required. *Id.* An entity fails to act, under the second element, only when the conduct at issue "is more than negligent, and involves an element of deliberateness." *Id.*

Defendant argues that the record in this matter, viewed in a light most favorable to Plaintiff, "might support a finding that STA was negligent." ECF No. 46. However, Defendant continues, "mere negligence does not give rise to liability for damages under Title II." ECF No. 46 at 6 (citing *Duvall*, 260 F.3d at 1138).

By contrast, Plaintiff alleges, with respect to the declarations that Defendant submitted in support of summary judgment, that "[a]ll three of the persons giving sworn declarations to the court [have] misrepresented the truth." ECF No. 44 at 8. Plaintiff also alleges that Ms. Marchioro, Ms. Millbanks, and Ms. Teague's actions, in not communicating to Plaintiff that the suspension had been lifted, were "intentional and not a mere oversite [sic] or accident." ECF No. 44 at 9. Plaintiff also alleges that 98% of her cancelled trips were on account of her disabilities. ECF No. 44 at 10. However, Plaintiff provides no evidence to support these assertions.

The Court understands Plaintiff's frustrations with the STA's blunders involving her two suspensions from paratransit service. In February 2016, the STA did not complete all of the steps necessary to lift Ms. Sway's 10-day suspension and remove the February 13, 2016, no-show from her record. In June 2016, the STA

used the February 2016 no-show that should have been removed from Ms. Sway's record as part of a basis to impose a 20-day suspension. Then, after cautiously interpreting Ms. Sway's letter as an appeal of her 20-day suspension, the STA failed to communicate to Ms. Sway that the suspension of service was not in effect while her appeal was pending. Those failures no doubt had significant consequences for Ms. Sway's emotional well-being during the pendency of STA's review of her appeal and for Ms. Sway's ability to travel around town during the same time period. However, there is no evidence that the actions by STA personnel, in either February or June and July 2016, were anything but mere mistakes. Mistakes do not equal acting deliberately or intentionally. There is no evidence that raises a material question of fact as to whether STA personnel either acted deliberately or intentionally on the basis of Ms. Sway's disability.

The undisputed facts do not support that STA's conduct went beyond negligence or that Defendant's conduct toward Plaintiff was based on Plaintiff's disability. Thus, there is no material question of fact regarding whether STA denied Ms. Sway service on the basis of a disability, and Defendant is entitled to judgment as a matter of law. The Court concludes that it is not appropriate for Ms. Sway's claim to proceed to trial.

/ / /

/ / /

/ / /

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion for Summary Judgment, **ECF No. 38**, is **GRANTED**. Ms. Sway's final remaining claim, under Title II of the ADA, 42 U.S.C. § 12132, **is dismissed with prejudice**.

2. Judgment shall be entered for Defendant, without costs or attorneys' fees to any party.

3. Any pending motions are **DENIED AS MOOT**, and all upcoming hearings and deadlines, including the scheduled bench trial, are **STRICKEN**.

The District Court Clerk is directed to enter this Order, provide copies to counsel and to Plaintiff, and **close this case**.

**DATED** October 11, 2018.

                      *s/ Rosanna Malouf Peterson*
                      ROSANNA MALOUF PETERSON
                      United States District Judge